**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HENRY DEWITT, JR.,

      Petitioner,

vs.                      Case No.:    3:07-cv-439-J-32MCR

MICHAEL CARROLL[1], etc.,

      Respondent.

_____/

## ORDER

Since June 2008, Petitioner Henry Dewitt has been civilly committed as a sexually violent predator ("SVP") pursuant to Florida's "Jimmy Ryce Act", codified at Florida Statutes §§ 394.910, et seq. Petitioner argues that Florida's civil commitment regime violates the Double Jeopardy and Ex Post Facto clauses of the United States Constitution. On May 19, 2015, the Court heard oral argument from both parties, and is now prepared to rule.

## I. Factual Background

Petitioner has a history of arrests or convictions for sexual offenses against children, which stretches at least as far back as 1988. (See Doc. 34-1 at 3-9). In 1994, a state court adjudicated Petitioner guilty of two counts of committing a lewd and

---

[1] The State has notified the Court that Michael Carroll has replaced George Sheldon as Secretary of the Florida Department of Children and Families. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Michael Carroll as the respondent.

lascivious act on a child under the age of 12, after Petitioner pled no contest to allegations that he molested his 7-year old granddaughter.  In 1998, a state court adjudicated Petitioner guilty of violating probation after he reportedly paid a neighbor to bring underage females over to his house to perform oral sex on him.  In May 2006, Petitioner was arrested and charged with luring or enticing a child after he attempted to lure a young girl to his vehicle in a Save-a-Lot parking lot.

In March 2007, Petitioner was incarcerated on unrelated convictions while awaiting trial on the aforementioned enticement charge.  Because of the sexual nature of the offense, the State referred Petitioner to the Department of Children and Families ("DCF") for a determination of whether he met the criteria for involuntary civil commitment under the Jimmy Ryce Act.  A psychologist evaluated Petitioner and found that he "suffers from both a mental abnormality and a personality disorder that makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care and treatment."  (Id. at 15).  The doctor noted that, even at the age of 75[2], Petitioner "remain[ed] a significant threat to sexually victimize more children."  (Id. at 12).  Shortly thereafter, the State filed a petition for commitment, and a state trial court found probable cause to detain Petitioner under the Ryce Act pending his trial on the enticement charge.

In May 2007, Petitioner pled guilty to luring or enticing a child, and was sentenced to time served plus four years of probation.  (Doc. 34-5).  Petitioner remained confined at the Florida Civil Commitment Center ("FCCC") until April

---

[2]     Petitioner is now 84 years old.

2008, when Petitioner entered into a "Joint Stipulation" with the State in which he agreed that he satisfied the criteria for civil commitment as a SVP, consented to the entry of an order of commitment, and agreed to participate in a sex offender treatment program.   (Doc. 34-6 at 2-3).   The State agreed to hold the order of commitment in abeyance so long as Petitioner complied with the terms of probation. In June 2008, however, a trial court found that Petitioner violated probation by having unsupervised contact with his 15-year old grandson.   Consequently, the order of commitment snapped into effect, and Petitioner was recommitted to the custody of the FCCC, where he has remained since.   Both Petitioner and the State report that Petitioner is in declining health, that he may suffer from dementia, but that he has refused to participate in the treatment programs offered at FCCC.

## II.      Procedural History

Petitioner filed the instant § 2254 petition, pro se, in May 2007 while in the custody of the State.   Petitioner made several attempts to amend the petition until in July 2010, the Court appointed counsel for Petitioner.   Petitioner's counsel determined that the § 2254 petition was unripe because he had not yet exhausted available state remedies.   The federal case was administratively closed while Petitioner sought post-conviction relief in state court, where Petitioner pursued the arguments at issue here, i.e., that Florida's Jimmy Ryce Act violates the Constitution's Ex Post Facto and Double Jeopardy clauses.   In January 2012, a state trial court entered an order denying the petition for a writ of habeas corpus,

explaining that the Florida Supreme Court rejected Petitioner's arguments in Westerheide v. State, 831 So. 2d 93 (Fla. 2002). (Doc. 34-9).

Petitioner appealed the trial court's decision to the Second District Court of Appeal. The district court of appeal "per curiam affirmed" the trial court's order without a written opinion. Dewitt v. State, No. 2D12-621, 2012 WL 3641765 (Fla. 2d DCA Aug. 24, 2012). Because the appellate court's decision was a "per curiam affirmance," the Florida Supreme Court was divested of discretionary jurisdiction to hear the case under Florida law. See Jackson v. State, 926 So. 2d 1262, 1265 (Fla. 2006). Petitioner therefore exhausted his state remedies. Thereafter, Petitioner filed an amended § 2254 petition in this Court (Doc. 33).

## III.   The Jimmy Ryce Act

The Ryce Act went into effect in Florida on January 1, 1999, and is formally titled "Involuntary Civil Commitment of Sexually Violent Predators." See Fla. Stat. Ch. 394, Part V. The Act is located in Title XXIX, Chapter 394 of the Florida Statutes, which relate to public health and mental health, respectively. Under the Act, individuals who meet the statutory definition of a "sexually violent predator" may be involuntarily committed for long-term treatment and care. The Act defines a SVP as any person who "[h]as been convicted of a sexually violent offense" and who "[s]uffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment." Fla. Stat. § 394.912(10). The legislature stated that its intent was to "create a civil commitment procedure for the long-term care and

4

treatment of sexually violent predators," because it found that existing provisions for the commitment of the mentally ill were insufficient to address the particular needs and dangers presented by SVP's.  Fla. Stat. § 394.910.

Civil commitment proceedings are typically initiated when the State Attorney files a petition for commitment[3], after which a state court must determine whether there is probable cause to determine that the individual is a SVP.  Fla. Stat. § 394.915(1).  If probable cause exists, the individual may be held in custody pending a final determination of whether (s)he is subject to civil commitment.  Fla. Stat. § 394.915(5).

Before the State civilly commits an individual, that person has the right to a trial by jury.  Fla. Stat. § 394.916(1) and (5).  The person has the right to the assistance of counsel and to present experts, and if the person is indigent (s)he may receive these services at no cost.  Fla. Stat. § 394.916(2) and (3).  At trial, the court or jury must "determine by clear and convincing evidence whether the person is a sexually violent predator.  If the determination is made by a jury, the verdict must be unanimous."  Fla. Stat. § 394.917(1).

If the court or jury finds that the individual is a SVP, (s)he is "committed to the custody of the Department of Children and Families for control, care, and treatment until such time as the person's mental abnormality or personality disorder

---

[3]     Under the Florida Supreme Court's interpretation of the law, an individual must first be in the lawful custody of the State before Ryce Act proceedings may begin. Larimore v. State, 2 So. 3d 101, 103 (Fla. 2008).  According to the State, however, such custody need not arise from a sexually violent offense.

has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2).

Thereafter, the Act requires review of the detainee's mental condition at least once a

year "or more frequently at the court's discretion," Fla. Stat. § 394.918(1), in order to

determine whether the detainee continues to qualify as a SVP.  After each annual

mental health status review, a court must hold a "limited hearing" to determine

whether there is probable cause to believe that the detainee is safe to be at large.  Fla.

Stat. § 394.918(3).  If the court finds such probable cause, the case is set for a non-

jury trial, at which the State continues to bear the burden of proving by clear and

convincing evidence that the detainee still qualifies as a SVP.  Fla. Stat. § 394.918(3)

and (4).  If the State fails to meet its burden, the detainee is released from custody.

The detainee continues to enjoy the right to counsel at these post-commitment

hearings.

## IV.    Discussion

Petitioner contends that the Act increases his punishment for sex offenses that

he committed before the Act became law, thereby violating the Ex Post Facto clause.

(Doc. 33 at 7).  Petitioner also contends that "the Ryce Act was designed as a punitive

measure and is tantamount to an additional criminal punishment for the same

offense in violation of the Double Jeopardy Clause."  (Id. at 7-8).

The threshold issue in resolving Petitioner's Ex Post Facto and Double

Jeopardy claims is whether involuntary commitment under the Ryce Act is civil or

criminal in nature.  Indeed, as the Supreme Court has stated, demonstrating the

punitive (i.e., criminal) nature of a commitment statute is an essential prerequisite

to making out a claim under the Ex Post Facto and Double Jeopardy clauses. <u>Kansas v. Hendricks</u>, 521 U.S. 346, 360-61, 369 (1997); <u>Seling v. Young</u>, 521 U.S. 250, 262 (2001). If the statutory regime of involuntary commitment is deemed criminal in nature, then the Ex Post Facto and Double Jeopardy clauses apply; if the regime is deemed civil in nature, however, then neither clause applies and Petitioner's claims fail.

Importantly, this case comes before the Court as a petition for a writ of habeas corpus under 28 U.S.C. § 2254. As such, the Court must makes its decision in the shadow of the Antiterrorism and Effective Death Penalty Act (AEDPA), which demands significant deference to a state court's adjudication of the claims presented. <u>See</u>, <u>e.g.</u>, <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008). A district court may not grant relief with regard to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>See</u>, <u>e.g.</u> <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that is entitled to deference. <u>Harrington v. Richter</u>, 562 U.S. 86, 98-99 (2011).

"Clearly established federal law" consists of the governing legal principles, rather than the <u>dicta</u>, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point, or the precedent is unclear as to the specific issue at question, the state court's conclusion cannot be considered contrary to, or an unreasonable application of, "clearly established Federal law." <u>Wright v. Van Patten</u>, 552 U.S. 120, 125-26 (2008); <u>Mitchell v. Esparza</u>, 540 U.S. 12, 15–16 (2003).

A state court's decision is "contrary to" the Supreme Court's clearly established precedents under § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court arrives at a result different from that reached by the Supreme Court on a set of "materially indistinguishable" facts. <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15–16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court identifies the correct governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner. <u>Brown</u>, 544 U.S. at 141.  A state court's decision might also represent an "unreasonable application" of the Supreme Court's precedents "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson v. Moore</u>, 234 F.3d 526,

531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001) (quoting <u>Williams</u>, 120 S.Ct. at 1520).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75–77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17–18.  Depending on the legal principle at issue, there may be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663–64 (2004).  Accordingly, a state court's decision is not subject to <u>de novo</u> review in federal court*;* instead, under 28 U.S.C. § 2254(d)(1), a district court may only overturn a state court's decision if it meets the demanding "objectively unreasonable" standard.  <u>Id.</u> at 665–66.

Here, the state trial court rejected Petitioner's Ex Post Facto and Double Jeopardy challenges to the Ryce Act , explaining that the Florida Supreme Court had resolved those issues in <u>Westerheide</u>, 831 So. 2d 93, <u>supra</u>.  Petitioner must show that the trial court's decision was contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).  Because the trial court relied on <u>Westerheide</u>, Petitioner must show that <u>Westerheide</u> was either contrary to clearly established federal law, or an unreasonable application thereof.

### 1. **Kansas v. Hendricks**

The "clearly established federal law" on which Petitioner relies is <u>Kansas v. Hendricks</u>, 521 U.S. 346 (1997).  In <u>Hendricks</u>, the Supreme Court considered whether Kansas's equivalent of the Jimmy Ryce Act violated the Constitution's Double Jeopardy and Ex Post Facto clauses, just as Petitioner argues here.  Finding that Kansas's statutory scheme for involuntarily committing SVP's was non-punitive

in nature, the Court concluded that it did not violate either of those constitutional guarantees.  Id. at 369.

In reaching its decision, the Court explained that "the categorization of a particular proceeding as civil or criminal 'is first of all a question of statutory construction.'"  Id. at 361 (quoting Allen v. Illinois, 478 U.S. 364, 366 (1986)).  The first step is to "ascertain whether the legislature meant to establish 'civil' proceedings.  If so, we ordinarily defer to the legislature's stated intent."  Hendricks, 521 U.S. at 361.  Because the Kansas legislature described its law as creating a civil commitment procedure, and because it placed the law in the probate code rather than the criminal code, the Court found that the legislature had expressed its intent to create a civil proceeding.  Id.

Although the Court recognized "that a 'civil label is not always dispositive,'" it explained that it would "reject the legislature's manifest intent only where a party challenging the statute provides the 'clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'"  Id. (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)).  The Court then discussed a variety of factors relevant to whether a statute's purpose or effect is punitive.  First is whether the commitment implicates either of the primary objectives of criminal punishment: retribution or deterrence.  Id. at 362.  Of particular importance is whether the commitment is based on affixing culpability for past criminal conduct, or something else.  Id.  Although a prior conviction or arrest for a sexually violent offense was a prerequisite for commitment under the Kansas law,

the fact that the law also required a finding of future dangerousness, which was linked to a "mental abnormality" or "personality disorder," indicated that it was non-punitive.  Id. at 361-62.[4]  Second, the Court considered whether the commitment requires a finding of scienter, because "[t]he existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes."  Id. at 362 (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963)).  Again, because Kansas's commitment statute required a finding of a "mental abnormality" rather than criminal intent, that indicated that the purpose of the law was not retributive.  Hendricks, 521 U.S. at 362.  Third, the Court considered whether the legislature intended the commitment to serve as a deterrent, including whether the conditions of confinement for the civilly committed are the same as for those in prison.  Id. at 362-63.  Because Kansas did not confine involuntarily-committed SVP's under the same harsh constraints as prisoners, it indicated that the commitment regime was non-punitive.  Id. at 363.  Fourth, the Court considered whether the duration of the individual's confinement is tied to his mental condition, or to something else.  Id. at 363-64.  The existence of periodic review of the detainee's condition, in conjunction with the requirement that the individual be released if found to be safe in public,

---

[4]     The Court did observe that, under Kansas's law, an individual could still be subject to involuntary commitment without a prior conviction for a sexually violent offense, and that this indicated the law was non-punitive.  Id. at 362.  However, it is unclear how significantly this influenced the Court's determination, and it is far from clear that the converse would necessarily be true, i.e., that if a statute made a conviction a prerequisite for involuntary commitment, then the statute would necessarily be punitive.  Indeed, the Court went on to state: "the fact that the Act may be 'tied to criminal activity' is 'insufficient to render the statut[e] punitive.'"  Id. (quoting United States v. Ursery, 518 U.S. 267 (1996)).

reinforced the conclusion that confinement is tied to the detainee's mental condition rather than to past misdeeds.  See id.

The Court also discussed some factors that failed to suggest that Kansas's system of involuntary confinement of SVP's was punitive.  For one, the use of procedural safeguards that parallel those in a criminal proceeding, such as the right to counsel, does not make the commitment proceeding "criminal."  Id. at 364-65. Second, and significantly, the absence of treatment from a commitment program, where the detainee's condition is untreatable, does not mean that the confinement is punitive.  Id. at 365-66.  Rather, "under the appropriate circumstances and when accompanied by proper procedures, incapacitation may be a legitimate end of the civil law."  Id. (citing Allen, 478 U.S. at 373) (emphasis added).  The Court explained that "we have never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others."  Hendricks, 521 U.S. at 366.  The Court concluded:

> Where the State has "disavowed any punitive intent"; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired, we cannot say that it acted with punitive intent. We therefore hold that the Act does not establish criminal proceedings and that involuntary confinement pursuant to the Act is not punitive. Our conclusion that the Act is nonpunitive thus removes an essential prerequisite for both Hendricks' double jeopardy and ex post facto claims.

Id. at 368-69.

### 2. **Westerheide v. State**

Five years after <u>Hendricks</u>, the Florida Supreme Court confronted the very same Ex Post Facto and Double Jeopardy issues with respect to Florida's involuntary commitment program for SVP's.  <u>See</u> <u>Westerheide v. State</u>, 831 So. 2d 93 (Fla. 2002). After a detailed discussion of the Supreme Court's decision in <u>Hendricks</u>, the Florida Supreme Court determined that Florida's Jimmy Ryce Act was also civil in nature, and therefore did not implicate the Double Jeopardy and Ex Post Facto clauses. <u>Westerheide</u>, 831 So. 2d at 98-104.

The Florida Supreme Court explained that "Florida's Ryce Act shares many of the hallmarks of the Kansas statute which the Supreme Court found significant in <u>Hendricks</u>." <u>Id.</u> at 100.  First, the court observed that on its face, "the Florida statute was clearly intended to create a civil commitment scheme." <u>Id.</u>  It then added:

> [w]hile only individuals convicted of a sexually violent offense are <u>eligible</u> for commitment under the Ryce Act, the previous conviction must be coupled with a current "mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment" in order to meet the statutory definition of a sexually violent predator. § 394.912(10), Fla. Stat. (2001). This belies Westerheide's argument that the State is seeking retribution for a past misdeed; involuntary commitment under the Ryce Act is based upon an individual's <u>current</u> mental state that makes it likely the person will engage in acts of sexual violence.

<u>Id.</u> (emphasis in original).

Like the Supreme Court in <u>Hendricks</u>, the Florida Supreme Court recognized that the civil label is not always dispositive, but nonetheless found that Westerheide had failed to present the "clearest proof" that "'the statutory scheme [is] so punitive

either in purpose or effect as to negate [the State's] intention' that the proceeding be civil." Id. (quoting Allen, 478 U.S. at 369).  Westerheide had raised several points about the Ryce Act, which he argued undermined the State's contention that commitment was civil in nature or designed to treat the detainee, including: that treatment was delayed until the detainee's criminal sentence had been served; that there is no effective treatment for sexually violent predators, meaning detention could last indefinitely; that "the scheme create[d] barriers to effective treatment" by, for example, removing the patient-pscyhotherapist privilege; and by not allowing for less restrictive alternatives.  Westerheide, 831 So. 2d at 100-01.  However, the Florida Supreme Court examined each of those contentions and concluded that they did not disprove the State's declared intent to create a civil commitment program.  Id. at 101-04.  Especially with respect to Westerheide's arguments about delayed treatment, the absence of effective treatment for SVP's, and the absence of less-restrictive alternatives, the court noted that these issues were also present in Hendricks, yet it did not alter the Supreme Court's conclusion that Kansas's law was non-punitive.  Id.

Accordingly, the Florida Supreme Court concluded that, consistent with Hendricks, the Ryce Act created proceedings to establish civil commitment rather than a criminal penalty, and thus Westerheide's Ex Post Facto and Double Jeopardy claims necessarily failed.  Id. at 104.

### 3.  Petitioner's Case[5]

Under 28 U.S.C. § 2254(d)(1), the question is not whether <u>Westerheide</u> was correct or incorrect, but whether it was an objectively unreasonable application of clearly established federal law, as interpreted by the United States Supreme Court.[6] This is a heavy burden, and Petitioner is unable to carry it.  Specifically, he has not shown that the state courts were objectively unreasonable in concluding that Florida's Ryce Act creates a civil rather than criminal proceeding.  For that reason, this Court cannot grant habeas relief under § 2254.

As <u>Westerheide</u> pointed out, the Florida legislature explicitly declared that it intended to create a civil commitment proceeding.  831 So. 2d at 100; <u>see also</u> Fla. Stat. § 394.910.  The law itself is formally titled "Involuntary Civil Commitment of Sexually Violent Predators," Fla. Stat., Ch. 394, Part V, and the law is located in a title concerning public health, under a chapter concerning mental health. Additionally, the legislature instructed that the Florida Rules of Civil Procedure should apply to such proceedings.  Fla. Stat. § 394.9155(1).  Although the law was

---

[5]    The Court need not resolve whether the instant petition presents a facial challenge or an "as-applied" challenge to whether civil commitment under the Ryce Act is punitive.  The Supreme Court held in <u>Seling</u> that an "as-applied" determination of whether a given state's SVP commitment scheme is punitive would be unworkable. <u>Seling</u>, 531 U.S. at 262-63.  Thus, the determination is a facial one.

[6]    <u>Westerheide</u> discussed and applied <u>Hendricks</u>, and Petitioner agreed at oral argument that the Florida Supreme Court identified the correct governing legal principles.  Because the <u>Westerheide</u> opinion (and by extension, the state trial court) correctly identified the governing legal principle, this case does not present the question of whether the state court's decision was "contrary to" clearly established federal law.  This is simply a question of whether the state courts' application of clearly established federal law was unreasonable.  <u>See</u> 28 U.S.C. § 2254(d)(1).

initially placed in the criminal code, the legislature relocated the law the following session to its current location in the statutes. (Doc. 36 at 9). As the State notes, there may be a number of alternative explanations for the law's initial placement alongside criminal statutes. (Id. at 9-11). This Court is unaware of any clearly established federal law or Supreme Court precedent holding that a statute's initial location in the criminal code, even after it has long since been relocated to the civil code, conclusively proves that it is punitive in nature. See 28 U.S.C. § 2254(d)(1); Van Patten, 552 U.S. at 126. Even without AEDPA's deferential standard, federal courts are required to defer to a state court's interpretation of state law, "since the views of the state's highest court with respect to state law are binding on the federal courts." Wainwright v. Goode, 464 U.S. 78, 84 (1983); see also Hendricks, 521 U.S. at 361 ("[W]e ordinarily defer to the legislature's stated intent… we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'") (quoting Ward, 448 U.S. at 248-49).[7] AEDPA only added more deference by limiting habeas relief to cases where a state court contradicted or unreasonably applied clearly established federal law, or made an unreasonable factual determination. 28 U.S.C. § 2254(d). Here, the Florida Supreme Court has spoken, holding that the plain language of the Ryce Act manifested the

---

[7]     Notably, the Supreme Court upheld Kansas's commitment scheme in Hendricks even without applying the deferential standard of review under § 2254(d), as that case came before the Court immediately following direct review by the Kansas Supreme Court. See Hendricks, 521 U.S. at 350 (recounting the procedural history of the case).

legislature's intent to provide for civil commitment of SVP's. <u>Westerheide</u>, 831 So. 2d at 100.   In the absence of any clearly established federal law that a statute's brief location in the criminal code overrides the legislature's express intent to create a civil proceeding, the Court cannot say that the state courts unreasonably interpreted the Ryce Act as creating a civil proceeding.

Once the State manifests its intent to create civil proceedings, as Florida has done here, the burden is on the petitioner to prove otherwise through the "clearest proof" that the commitment scheme is so punitive in purpose or effect as to negate the State's declared intent. <u>Hendricks</u>, 521 U.S. at 361; <u>Westerheide</u>, 831 So. 2d at 100. The state court did not unreasonably conclude that the Ryce Act shares many of the features of the Kansas scheme that was upheld in <u>Hendricks</u>, and thus that Petitioner had not disproved the State's intent to create a civil proceeding.  Like the Kansas statute, the Ryce Act requires a finding that an individual suffers from a mental abnormality or personality disorder that renders the person a threat to commit future acts of sexual violence.  Fla. Stat. § 394.912(10).  Thus, commitment is not based on previous criminal acts alone, but on an individual's <u>current</u> mental condition and the <u>future</u> danger they pose to the community.  Moreover, because commitment is based on a mental condition or personality disorder rather than some form of scienter, the commitment scheme does not affix a consequence for criminally culpable behavior.  That feature sets the Ryce Act apart from criminal penalties because "[t]he existence of a scienter requirement is customarily an important element in distinguishing criminal from civil statutes." <u>Hendricks</u>, 521 U.S. at 362

(citing <u>Mendoza-Martinez</u>, 372 U.S. at 168).   Detainees under the Ryce Act are committed to the custody of the Department of Children and Families, rather than the Department of Corrections, for treatment if such is possible.  <u>See</u> Fla. Stat. § 394.917(2).  There is no indication that involuntarily committed SVP's are subject to the same harsh conditions as prisoners, and thus, the nature of the confinement also lends support to the conclusion that Ryce Act commitment is non-punitive. Significantly as well, the fact that the State must annually review a detainee's mental status, and release him or her when she is deemed safe to be at large, confirms that the duration of involuntary confinement is tied to the detainee's mental status and dangerousness to the community, not to their past deeds.

Petitioner argues that because treatment for SVP's under the Ryce Act is delayed until they have completed their criminal sentence (thereby extending the length of their commitment), the purposes and length of detention are disconnected from the rehabilitative reasons advanced by the State.  (Doc. 33 at 14).  However, <u>Westerheide</u> observed that the Kansas statute at issue in <u>Hendricks</u> also delayed treatment until the end of a detainee's criminal sentence, and yet the Supreme Court still found that the commitment scheme was non-retributive.  <u>Westerheide</u>, 831 So. 2d at 101.  The state court's conclusion that delayed treatment did not undermine the civil nature of the Ryce Act, therefore, was not objectively unreasonable.

Petitioner adds that because there is no proven treatment for SVP's, commitment under the Ryce Act must be punitive.  However, the Supreme Court rejected this argument in <u>Hendricks</u>, 521 U.S. at 366, explaining that incapacitation

18

of those who are untreatable, in the interest of protecting the community, is a valid goal of civil laws.  The Florida Supreme Court correctly recognized this principle as well.  <u>Westerheide</u>, 831 So. 2d at 101-02.

Petitioner also argues that because the Ryce Act makes a conviction for a sexually violent offense a prerequisite for commitment, the Act is actually designed to punish individuals for previous crimes.  It is true that the Kansas statute at issue in <u>Hendricks</u> allowed for the confinement of those who had either been convicted <u>or</u> charged with a sexually violent offense, 521 U.S. at 352, and the Supreme Court observed that the absence of "the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed," <u>id.</u> at 362.  It is also true that the Ryce Act's definition of a SVP requires a prior conviction (not merely an arrest) for a sexually violent offense.  Fla. Stat. § 394.912(10)(a).  Three points are in order, however.  First, while a prior conviction is <u>necessary</u> to qualify as a SVP under the Ryce Act, it is still <u>not</u> <u>sufficient</u>.  Rather, the State still must prove that an individual suffers from a current mental abnormality or personality disorder that makes them a threat to the community. Fla. Stat. § 394.912(10)(b).  This requirement reinforces the conclusion that the program is mainly interested in treating an individual and protecting society rather than executing punishment, because the statute requires more than just a conviction to qualify for confinement.  Second, the Supreme Court gave no indication in <u>Hendricks</u> as to what weight it gave the fact that the Kansas statute did not make a prior conviction a prerequisite for commitment, nor is there any indication that if the statute had done so, that the Court would have found the

law punitive.  Thus, it would not constitute an unreasonable application of "clearly established federal law" for a state court not to find a commitment scheme punitive merely because it makes a conviction a prerequisite.  See Van Patten, 552 U.S. at 125-26 (where the Supreme Court's precedents are unclear as to the specific issue at question, the state court's conclusion cannot be considered contrary to, or an unreasonable application of, "clearly established Federal law.").  Third, the Ryce Act's requirement of a prior conviction could plausibly be interpreted as a safeguard for potential detainees.  By requiring a prior conviction rather than merely an arrest, the statute shields from involuntary confinement those who have never been found to have actually committed a sexually violent crime.  Indeed, requiring a prior conviction, rather than merely an arrest or accusation, narrows the class of persons eligible for involuntary commitment.  As the Supreme Court noted in Hendricks, one of the factors that supported the non-punitive nature of the Kansas statute was the fact that it "limited confinement to a small segment of particularly dangerous individuals." 521 U.S. at 368.  Restricting involuntary commitment to those who have actually been convicted of a sexually violent offense (and who also suffer from a mental abnormality or personality disorder) helps limit confinement to only the most dangerous individuals.  Thus, the requirement of a prior conviction does not necessarily indicate that the Act has a retributive purpose.

Petitioner also argues that a statement to a newspaper by a legislative cosponsor of the Ryce Act indicates that the law is punitive by design.  After the Ryce Act had been passed, Alex Villalobos, a member of the Florida House of

Representatives who sponsored a version of the law, stated to the St. Petersburg Times that "[t]he only reason we have to have the Jimmy Ryce Act is because sex offenders were getting short sentences." (Doc. 34-11 at 3). Petitioner contends that this statement shows that the legislature passed the Ryce Act in order to increase the punishment for sex offenders. Petitioner does acknowledge, however, that one lawmaker does not necessarily speak for the entire legislature. (Doc. 37 at 4). Although Petitioner correctly points out that "a legislator's <u>contemporaneous</u> statement can be useful in helping to clarify the legislature's intent," (<u>id.</u>) (quoting <u>Curse v. Office of Workers' Compensation Programs</u>, 843 F.2d 456, 462 n.18 (11th Cir. 1988) (emphasis added), then-Representative Villalobos's statement was not contemporaneous with the passage of the bill. The Ryce Act went into effect on January 1, 1999, but Villalobos did not give the statement until October 1999, when the newspaper article was published. Because there is no indication that Villalobos shared his sentiment with any other legislator at the time the law was being considered, his opinion is not necessarily probative of any other lawmaker's intent. Moreover, the Supreme Court has instructed that in interpreting a statute, the plain meaning of the text takes priority over the floor statements of one, or even two, legislative sponsors. <u>Barnhart v. Sigmon Coal Co., Inc.</u>, 534 U.S. 438, 456-57 (2002). The Florida legislature unambiguously stated its intent to create a civil commitment proceeding in the text of the statute itself. Fla. Stat. § 394.910. Therefore, Representative Villalobos's <u>post hoc</u> statement to the contrary cannot undo that conclusion.

Finally, Petitioner argues that because some State Attorney's Offices occasionally hold orders of commitment in abeyance so long as SVP's attend a sex offender treatment program or comply with the terms of probation, this proves (1) that less restrictive alternatives to confinement exist, and (2) that State Attorneys evidently view Ryce Act commitment as a deterrent to violating probation – and if Ryce Act commitment has deterrent value, it is criminal in nature.  First, it is worth noting that this practice is not the norm.  According to a 2008 policy analysis report, out of 493 cases where a judge found probable cause to believe that an individual qualified as a SVP, 73 individuals were either released with conditions or pursuant to a stipulation.  (See Doc. 34-13 at 11).  That figure represents just 14.8% of cases.  Although particular prosecutors may allow such acts of lenience in certain circumstances, their views and opinions cannot override the legislature's explicit determination that for SVP's, there is no less restrictive alternative to involuntary commitment.  See Fla. Stat. § 394.911.  Simply put, prosecutors cannot speak for the legislature.  Nor can the fact that some prosecutors hold commitment orders in abeyance as long as individuals comply with certain conditions – a practice that the Florida legislature did not expressly authorize – disprove the legislature's manifest intent that commitment of SVP's be civil in nature.  The Supreme Court has made clear that whether a SVP confinement scheme is criminal or civil is determined as a facial matter, not on an as-applied basis.  Young, 531 U.S. at 263.  The "civil nature of a confinement scheme cannot be altered based merely on vagaries in the implementation of the authorizing statute."  Id.

### 4. Other federal case law

The Court has endeavored to search for federal habeas cases addressing whether the Ryce Act creates a criminal penalty in violation of the Ex Post Facto or Double Jeopardy clauses, whether the Florida Supreme Court's <u>Westerheide</u> decision was an unreasonable application of clearly established federal law, or whether similar SVP commitment schemes in other states have been deemed criminal in nature. Neither Petitioner nor the Court is aware of any case holding, on federal habeas review, that a state court was unreasonable in determining that a SVP commitment scheme was civil.

To the extent there is case law, it is generally unfavorable to Petitioner. Recently, the Third Circuit Court of Appeals held that a state court did not unreasonably apply <u>Kansas v. Hendricks</u> in finding that New Jersey's similar Sexually Violent Predator Act was civil in nature. <u>Conover v. Main</u>, ____ F. App'x ____, 2015 WL 777597, at *1-2 (3d Cir. 2015). The Ninth Circuit held that Washington state's SVP commitment scheme was civil, after the Supreme Court remanded with instructions to consider whether the statute was punitive only as a facial matter. <u>Young v. Weston</u>, 344 F.3d 973, 975-77 (9th Cir. 2003). Other courts in this district have rejected Ex Post Facto and Double Jeopardy challenges to the Jimmy Ryce Act as well. <u>See</u>, <u>e.g</u>, <u>Finfrock v. Crist</u>, 2008 WL 4710784, at *3 (M.D. Fla. Oct. 23, 2008) ("Plaintiff's argument that the Act violates the Double Jeopardy Clause is also unsound. The Jimmy Ryce Act is not subject

to double jeopardy prohibitions because the act is civil in nature, not punitive in nature."); Widel v. Hadi, 2007 WL 4218948 (M.D. Fla. Nov. 28, 2007).

In a different context, where the Eleventh Circuit sought to discern what level of scrutiny to apply to restraints on the constitutional rights of SVP's confined under the Jimmy Ryce Act, the court determined that the Turner standard[8] needed to be modified because those confined pursuant to the law were civilly committed rather than criminally imprisoned. Pesci v. Budz, 730 F.3d 1291, 1297-98 (11th Cir. 2013). The Eleventh Circuit explained:

> We determine that a similar balance should be struck in scrutinizing the constitutional claims of civil detainees, but the standard must be modified to reflect the salient differences between civil detention and criminal incarceration. As the district court rightly noted, Pesci is not a prisoner and the Florida Civil Commitment Center is not a prison. Application of the Turner standard in the civil detention context must be tailored to reflect that the range of legitimate governmental interests is narrower here than it is in a prison context….
> ***
> The Supreme Court drew this distinction with clarity when it upheld a Kansas statute similar to the Florida statute providing for civil commitment of sexually violent predators….

Id. at 1297 (citing Hendricks, 521 U.S. 346). In determining that the Turner standard had to be modified for those confined under the Jimmy Ryce Act, the Eleventh Circuit recognized that confinement under the Ryce Act is not penological in nature. See Pesci, 730 F.3d at 1297. While the Eleventh Circuit found that "[t]here are

---

[8]    The "Turner standard" derives from the Supreme Court's decision in Turner v. Safley, 482 U.S. 78 (1987), in which the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," id. at 89. The standard refers to the level of scrutiny applied to institutional restrictions on the constitutional rights of inmates.

parallels… between the administration of an institution like the FCCC and a prison that support the application of a modified <u>Turner</u> standard…," the court also recognized that the Ryce Act "was enacted for the 'dual state interests of providing mental health treatment to sexually violent predators and protecting the public from these individuals.'" <u>Id.</u> at 1298-99 (quoting <u>Westerheide</u>, 831 So. 2d at 112).

## V.    Conclusion

The Ryce Act is nearly identical in every major respect to Kansas's SVP commitment statute, which the Supreme Court upheld in <u>Hendricks</u>.  To the extent there are differences, they are not significant enough to compel the conclusion that the Florida state courts were "objectively unreasonable" in finding that commitment under the Ryce Act is non-punitive.  <u>See</u> <u>Andrade</u>, 538 U.S. at 75 (citing <u>Williams</u>, 529 U.S. at 409).  The Florida Supreme Court carefully analyzed the Ryce Act and the Supreme Court's <u>Hendricks</u> decision before concluding that the Ryce Act does not create a criminal penalty.  <u>See</u> <u>Westerheide</u>, 831 So. 2d at 100-04.  In turn, the trial court in this case applied <u>Westerheide</u> to Petitioner's post-conviction motion to determine that his Ex Post Facto and Double Jeopardy claims failed.

The state court was not objectively unreasonable in concluding that involuntary commitment under the Ryce Act is civil in nature, and as such, that Petitioner's Ex Post Facto and Double Jeopardy claims failed.  Petitioner's motion under § 2254 is therefore due to be denied.[9]

---

[9]     Though not relevant to the specific constitutional claims Petitioner raises in the petition, it is noteworthy that during the term of his civil commitment, Petitioner

Accordingly, it is hereby

**ORDERED:**

1. Petitioner Henry Dewitt's amended Petition for Writ of Habeas Corpus (Doc. 33) is **DENIED**.

2. The Clerk shall enter judgment in favor of Respondent and against Henry Dewitt, and close the file.

3. The Court appreciates the service of court-appointed counsel.

CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has not absolute entitlement to appeal a district court's denial of his motion.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

---

has apparently refused treatment and has not participated in the annual review process of his commitment.  He also has recently decided not to avail himself of an offer by the State to release him because he is apparently concerned that he will not be able to meet the conditions attached to the proposed release.

Petitioner has not made the requisite showing in these circumstances.   Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of June, 2015.


TIMOTHY J. CORRIGAN
United States District Judge


Lc 19

Copies:

Counsel of record
Petitioner Henry Dewitt